Bliss, Respondent, vs. Griffiths, Appellant.

*October 13—November 16, 1948.*

For the appellant there was a brief by *Thronson, Roethe & Agnew* of Janesville, and oral argument by *John T. Roethe* and *E. P. Agnew.*

For the respondent there was a brief by *McGowan, Geffs, Geffs & Block* of Janesville, and oral argument by *Jacob Geffs.*

MARTIN, J.   By its special verdict the jury found that the plaintiff and defendant entered into an oral agreement that the defendant would pay the plaintiff a commission of ten per cent if plaintiff found a purchaser for a certain Lima three-quarter shovel for the sum of $16,000 and that the plaintiff performed his agreement by finding a purchaser for the shovel for that amount.

Defendant, Clarence J. Griffiths, testified that in June, 1947, he agreed to pay plaintiff, Lester A. Bliss, all he could get over $28,000 if plaintiff found a purchaser for the shovel and crusher within two weeks' time.   He denied that he had

any conversation with plaintiff on August 5th and 7th; denied that he ever agreed to sell the shovel separately; and denied that he ever agreed to pay plaintiff a commission of ten per cent.

Bliss testified that he had a conversation with Griffiths on August 5, 1947, that it was agreed that he could sell the shovel separately for $16,000, and that he was to receive a ten per cent commission. He testified that he took the measurements of the shovel and gave them to Luety, and Luety confirmed that Bliss furnished him with this information. Bliss testified further that he had seen Luety on August 5th and Luety was interested in buying the shovel but wanted to see the invoice. Bliss saw Griffiths on August 7th and told him that Luety would buy the shovel but insisted upon seeing the invoice. Griffiths was reluctant to show the invoice although the invoice and freight bill show he paid $16,022.09 for the shovel on May 2, 1947. On August 7th or 8th, Bliss informed Luety that Griffiths was reluctant about showing the invoice but that the shovel could be had and Luety said he would think it over. On August 10th or 11th, Bliss left for Louisiana.

Griffiths testified that he saw Luety on August 4th, pursuant to a telephone call from Luety, and on August 8th, and Luety told him on the first visit that Bliss had been to see him.

On August 10, 1947, Luety looked over the shovel and a sales agreement was drawn up which was dated August 9th because August 10th was on Sunday. The sale was completed on August 14th. Luety testified that when he handed Griffiths the draft at the bank he mentioned Bliss and stated that he (Luety) had not entered into any agreement with him (Bliss) to pay him anything for finding the machine, and Griffiths did not answer. Griffiths testified that nothing was mentioned about Bliss in settling the transaction at the bank.

Bliss returned from Louisiana about August 27th, and in a telephone conversation with Griffiths about August 29th,

learned that the sale of the shovel to Luety had been completed.

While there is a dispute on the compensation and the various testimony is contradictory, the evidence is clear that Bliss was a broker in heavy machinery which Griffiths knew and that Bliss had sold machinery for him on a previous occasion to the one in question; both parties testified that it was Bliss' job to find a prospective purchaser; that Bliss secured Luety as a prospect and informed Griffiths; and that Bliss had furnished measurements of the shovel to Luety to satisfy him that the measurements were identical to his crane boom and trench holer. On cross-examination of Luety by plaintiff's counsel, Luety did not deny the fact that Griffiths had told him, "I'll either pay him [Bliss] or get around him." Luety stated he did not recall telling Bliss this—he did not state that Griffiths had not made this remark.

It was for the jury to determine the credibility of the witnesses. The instructions to the jury were clear and the questions of the special verdict covered the disputes of fact. The defendant made no objections to the form of the verdict until after the verdict had been received. Objections to the form of special verdict submitted to a jury, not raised at the time, may not be raised on appeal. *John Hoffmann & Sons Co. v. Parks* (1921), 175 Wis. 303, 184 N. W. 1035.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., took no part.